1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LISA MARIA STEWART,                      Case No.  1:22-cv-00189-ADA-HBK

12                  Plaintiff,                  FINDINGS AND RECOMMENDATIONS TO
                                                GRANT PLAINTIFF'S MOTION FOR
13         v.                                   SUMMARY JUDGMENT, DENY
                                                DEFENDANT'S CROSS-MOTION FOR
14    KILOLO KIJAKAZI, ACTING                   SUMMARY JUDGMENT, AND REMAND
      COMMISSIONER OF SOCIAL                    CASE TO THE COMMISSIONER OF
15    SECURITY,                                 SOCIAL SECURITY[1]

16                  Defendant.                  (Doc. Nos.  17, 19)

17                                              FOURTEEN-DAY OBJECTION DEADLINE

18

19         Lisa Maria Stewart ("Plaintiff"), seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21   supplemental security income and disability insurance benefits under the Social Security Act.

22   (Doc. No. 1).  The matter is currently before the undersigned on the parties' briefs, which were

23   submitted without oral argument.  (Doc. Nos. 17, 19).  For the reasons stated, the undersigned

24   RECOMMENDS granting Plaintiff's motion for summary judgment, denying the

25   Commissioner's cross-motion for summary judgment, and remanding for further administrative

26   proceedings.

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
     302(c)(15) (E.D. Cal. 2022).

1

## I.      JURISDICTION

2      Plaintiff filed for disability insurance benefits and supplemental security income on

3 January 3, 2019.  (AR 216-28).  She alleged a disability onset date of December 18, 2017 in both

4 applications.  (*Id*.).  Benefits were denied initially (AR 90-101, 136-40), and upon reconsideration

5 (AR 119-33, 145-51).  A hearing was conducted before an Administrative Law Judge ("ALJ") on

6 November 9, 2020.  (AR 32-61).  Plaintiff was represented by counsel and testified at the hearing.

7 (*Id*.).  On February 9, 2021, the ALJ issued an unfavorable decision (AR 12-31) and on December

8 15, 2021, the Appeals Council denied review.  (AR 1-6).  The matter is before the Court under 42

9 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

10

## II.      BACKGROUND

11      The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

12 decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

13 summarized here.

14      Plaintiff was 47 years old at the time of the hearing.  (*See* AR 34).  She completed

15 eleventh grade.  (AR 251).  Plaintiff testified that she lives with her daughter and two

16 grandchildren.  (AR 39).  She has work history as a bus driver and care provider.  (AR 55).

17 Plaintiff sustained a ruptured globe of her right eye after an assault by her husband, and later lost

18 her right eye and was fitted with a prosthetic eye.  (AR 21, 330).  At the time of the hearing,

19 Plaintiff volunteered answering phones at Catholic Charities for a total of about three to four days

20 in the past month.  (AR 40, 59-60).  Plaintiff testified that she has trouble with the volunteer job

21 because she has bad vision, her eye starts hurting, she has trouble focusing, she gets anxiety

22 attacks, she has to take consistent breaks to clean her prosthetic eye because it is constantly

23 draining, she has to take four extra ten minute breaks on average because of the pain in her eye,

24 and she often has had to take days off or leave early.  (AR 43-46, 50-52).  She reported that she

25 gets migraines in her right eye "all day" "nonstop"; the pain reaches 8 or 9 on a scale of 1-10; and

26 she has to lay down in a dark room for 45 minutes.  (AR 40).  She experiences depression and

27 anxiety; and fears that someone will attack her on her right side because she cannot see what is

28 coming from that side.  (AR 41-42).  Plaintiff testified that she trips on things because she cannot

1   see on her right side, uses a walking stick, and has trouble seeing words on the computer screen.

2   (AR 47-48).

3   ### III.   STANDARD OF REVIEW

4       A district court's review of a final decision of the Commissioner of Social Security is

5   governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

6   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

7   is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

8   evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

9   conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

10  equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

11  citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

12  consider the entire record as a whole rather than searching for supporting evidence in isolation.

13  *Id.*

14      In reviewing a denial of benefits, a district court may not substitute its judgment for that of

15  the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

16  to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

17  2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

18  harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

19  nondisability determination." *Id.* (quotation and citation omitted).  The party appealing the ALJ's

20  decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

21  U.S. 396, 409-10 (2009).

22  ### IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

23      A claimant must satisfy two conditions to be considered "disabled" within the meaning of

24  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

25  activity by reason of any medically determinable physical or mental impairment which can be

26  expected to result in death or which has lasted or can be expected to last for a continuous period

27  of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the

28  claimant's impairment must be "of such severity that he is not only unable to do his previous

1   work[,] but cannot, considering his age, education, and work experience, engage in any other kind

2   of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

3   1382c(a)(3)(B).

4         The Commissioner has established a five-step sequential analysis to determine whether a

5   claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

6   At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§

7   404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity,"

8   the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b),

9   416.920(b).

10         If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

11   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

12   C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or

13   combination of impairments which significantly limits [his or her] physical or mental ability to do

14   basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

15   If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner

16   must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

17         At step three, the Commissioner compares the claimant's impairment to severe

18   impairments recognized by the Commissioner to be so severe as to preclude a person from

19   engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If

20   the impairment is as severe or more severe than one of the enumerated impairments, the

21   Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d),

22   416.920(d).

23         If the severity of the claimant's impairment does not meet or exceed the severity of the

24   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

25   functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

26   ability to perform physical and mental work activities on a sustained basis despite his or her

27   limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth

28   steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.     ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 18, 2017, the alleged onset date.  (AR 17).  At step two, the ALJ found that Plaintiff has the following severe impairments: obesity; loss of right eye in 2017; obstructive sleep apnea; migraines; depression; post-traumatic stress disorder (PTSD); anxiety; and panic attacks.  (AR 18).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 18).  The ALJ then found that Plaintiff has the RFC to

perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; the claimant can tolerate occasional exposure to excessive vibration; the claimant is unable to use moving hazardous machinery or perform commercial driving; the claimant can have no exposure to unprotected heights; the claimant can engage in occasional fine detailed work; the claimant cannot perform work that requires a wide field of vision to perform critical tasks; the claimant cannot perform jobs requiring nighttime vision or jobs that require depth perception; the claimant is able to understand, remember, and carry out simple instructions that can be learned in up to and including 30 days of on-the-job training; the claimant can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work; the claimant can have superficial but no direct interaction with the public; the claimant can have only occasional interaction with coworkers and supervisors; and the claimant is able to adapt to occasional changes in the workplace.

(AR 20).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.

(AR 25).  At step five, the ALJ found that considering Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national economy that

Plaintiff can perform, including cleaner, housekeeper, cafeteria attendant, and office helper.  (AR

25-26).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined

in the Social Security Act, from December 18, 2017, through the date of the decision.  (AR 26).

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her

supplemental security income benefits under Title XVI of the Social Security Act and disability

insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the

following issue for this Court's review: whether the ALJ properly considered Plaintiff's

subjective complaints, particularly as to her headaches and right eye symptoms.  (Doc. No. 17 at

6-10).

## VII.    DISCUSSION

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding

subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

The ALJ first must determine whether there is "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged."

6

*Id.* (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 21).  Plaintiff argues the ALJ "improperly evaluated [her] symptoms associated with her chronic headaches and prosthetic right eye because of her severe right eye trauma."  (Doc. No. 17 at 6).  Defendant responds that "the ALJ's discounting of Plaintiff's allegedly work-preclusive prosthetic eye and headache symptoms met the substantial evidence standard of review."  (Doc. No. 19 at 9).  In the alternative, Defendant asserts that even assuming, arguendo, that the ALJ erred in considering Plaintiff's prosthetic eye and chronic headache symptoms, any error should be deemed harmless because "Plaintiff does not challenge the ALJ's discounting of her allegedly work-preclusive mental limitations, based on, among other things, her providers' 'mild' Global

Assessment of Functioning (GAF) ratings; treatment notes with generally normal psychiatric examinations that intermittently showed anxiety, fearful thoughts, or depression, but persistently noted her full orientation, appropriate mood and affect, and, at least, fair insight and judgment; and documentation of her 'good progress' with treatment; as well as, Plaintiff's self-termination of all psychotropic medication."  (*Id*. at 8, 10-12).

Defendant is correct that Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."  (Doc. No. 19 at 12-13 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *Smartt v. Kijakazi*, 53 F. 4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince.")).  However, "[a]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *Brown-Hunter*, 806 F.3d at 494 ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination.").  Here, a plain reading of the ALJ's decision indicates that while she identified Plaintiff's claims of eye socket pain and headaches, as well as "mental health symptoms," the ALJ's analysis is almost entirely comprised of a chronological summary of the medical evidence including Plaintiff's denial of headaches and subsequent report of "continued" migraines; reports of severe mental health symptoms, anxious and fearful thoughts, and depressed mood; mental status examinations showing appropriate mood and affect, with normal insight and judgment; indications that Plaintiff was making good progress; notations that medications provided relief; mental health screenings that indicate moderate to severe scores; endorsement of passive suicidal ideation; and chronic migraines that were not "getting any better at all."  (AR 21-23 (citing AR

8

352, 355, 358, 392-94, 456 (reporting headaches since injury), 460 (complains of headaches that occur "all the time"), 472 (eye pain and discharge), 476 (eye pain), 480 (constant eye pain), 523 (endorses migraines), 525 (fair insight and judgment but noting "good progress"), 531 (noting minimal progress), 541 (reported headaches), 551 (chronic nonintractable headache), 555-56 (chronic headaches), 559 (chronic nonintractable headache), 566-67 (chronic left sided headaches and ear pain), 574 (denied headache)).  The ALJ's general finding that Plaintiff's symptom claims were not entirely consistent with the medical record, without identification or explanation as to how the medical evidence undermined her testimony was not a clear and convincing reason, supported by substantial evidence, to reject her symptom claims.

As noted by Plaintiff, the only specific "reason" arguably offered by the ALJ to discount Plaintiff's claims of eye pain, discharge, and headaches, was Plaintiff's denial of those symptoms as noted in a handful of 2018 treatment records.  (AR 22).  The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may not "cherry-pick" aspects of the medical record and focus only on those aspects that fail to support a finding of disability.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).  Here, as noted by Plaintiff, in addition to denials of headaches and eye pain at three treatment visits as cited by the ALJ in the summary of medical evidence, the longitudinal record also includes ongoing reports of chronic headaches and eye pain.  (Doc. No. 17 at 8-9); *see* AR 21-23, 352, 355, 358, 392-94, 456, 460, 472, 476, 480, 523, 541, 551, 555-56, 559, 566-67. Thus, to the extent the ALJ discounted Plaintiff's right eye symptoms and headaches solely because they were not consistent with the medical evidence, this was not a clear and convincing reason, supported by substantial evidence.

Finally, Defendant references the ALJ's summary of Plaintiff's testimony regarding her symptoms, as well as the ALJ's summary of the medical evidence, and argues those portions of the decision include additional reasons given by the ALJ for discounting Plaintiff's symptom claims including headaches and symptoms related to her prosthetic eye.  (Doc. No. 19 at 10-12). These reasons include lack of corroboration by objective evidence because Plaintiff's vision in

her remaining eye is "20/20"; improvement in symptoms because the record includes evidence that Plaintiff reported "occasional headaches" to her treating ophthalmologist and "often denied headaches"; inconsistency between symptom claims and daily activities because Plaintiff testified that she lived with her daughter and grandchildren, prepared simple meals, took public transportation, and volunteered as a receptionist at a charitable organization "several days a week, for several hours at a time"; improvement in symptoms even after stopping pain medication; and "conflicts" between Plaintiff's "statements" and assessments by state agency consulting physicians.  (*Id.*).  Factors the ALJ may consider when evaluating Plaintiff's symptom claims include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, effectiveness of treatment, and inconsistencies in testimony.  *Ghanim*, 763 F.3d at 1163; *see Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence); *Rollins*, 261 F.3d at 857 (ALJ may consider a claimant's activities that undermine reported symptoms); 20 C.F.R. § 416.929(c)(4) (ALJ may consider inconsistencies in the evidence and "the extent to which there are any conflicts between" Plaintiff's statements and statements by medical sources about how symptoms affect Plaintiff).  However, as discussed *supra*, this evidence was noted as part of the ALJ's summary of Plaintiff's testimony and the medical record; thus, the Court is not permitted to consider these "reasons" as they were not offered by the ALJ in the decision as reasons to discount Plaintiff's symptom claims. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.  On remand, the ALJ must reconsider Plaintiff's symptom claims, particularly as to her headaches and right eye symptoms.

////

## VIII.   REMEDY

Plaintiff argues the Court should remand the case with instructions to award benefits. (Doc. No. 17 at 10).  The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).  Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence.  "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Treichler*, 775 F.3d at 1101.  Instead, the Court recommends this case be remanded for further proceedings.  On remand, the ALJ should reevaluate Plaintiff's symptom claims.  The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **RECOMMENDED**:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 17) be GRANTED.

1    2.    Defendant's Cross Motion for Summary Judgment (Doc. No. 19) be DENIED.

2    3.    Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the

3          Commissioner's decision and REMAND this case back to the Commissioner of

4          Social Security for further proceedings consistent with this Order.

5    4.    The district court direct the Clerk to enter judgment in favor of the Plaintiff,

6          terminate any pending motions/deadlines, and close this case.

7                              **<u>NOTICE TO PARTIES</u>**

8          These findings and recommendations will be submitted to the United States district judge

9    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

10   days after being served with these findings and recommendations, a party may file written

11    objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

12   Findings and Recommendations."  Parties are advised that failure to file objections within the

13   specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

14   838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

15

16   Dated:   June 22, 2023

17                                          HELENA M. BARCH-KUCHTA
                                            UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28